IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

DANYA B.,[1]

        Plaintiff,

v.

NANCY A. BERRYHILL, Acting
Commissioner of the Social Security
Administration,

        Defendant.

No. 3:17-cv-01682-HZ

OPINION & ORDER

George J. Wall
825 NE 20th Avenue, Suite 330
Portland, Oregon 97232

        Attorney for Plaintiff

Billy Williams
United States Attorney
Renata Gowie
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, Oregon 97204

Kathryn Ann Miller
Social Security Administration
Office of the General Counsel
701 Fifth Avenue, Suite 2900 M/S 901
Seattle, Washington 98104

        Attorneys for Defendant

---

[1] In the interest of privacy, this Opinion and Order uses only Plaintiff's first name and the initial of her last name.

1 – OPINION & ORDER

HERNÁNDEZ, District Judge:

Plaintiff Danya B. brings this action for judicial review of the Commissioner's final decision denying her applications for disability insurance benefits ("DIB") under Title II of the Social Security Act and supplemental security income ("SSI") under Title XVI of the Act. The Court has jurisdiction under 42 U.S.C. § 405(g) (incorporated by 42 U.S.C. § 1382(c)(3)). The issues before the Court are whether the Administrative Law Judge ("ALJ") erred by: (1) discounting Plaintiff's testimony; (2) discounting the opinion of Maria Foy, FNP, Plaintiff's primary-care provider; and (3) discounting the opinion of the testifying medical expert, Melvin M. Harter, M.D. The Court affirms the Commissioner's final decision.

BACKGROUND

Plaintiff applied for DIB on June 28, 2013, and SSI on September 27, 2013, alleging a disability onset date of July 31, 2009. Tr. 282, 289.[2] Plaintiff's applications were denied initially and upon reconsideration. Plaintiff's first administrative hearing was held on December 1, 2015, before ALJ S. Andrew Grace. Tr. 71. At the initial hearing, Plaintiff amended her alleged onset date to January 6, 2011. Tr. 75. After the initial hearing, the ALJ received additional medical evidence including a comprehensive physical examination. The ALJ then held a second hearing on May 5, 2016, at which Dr. Harter testified as a nonexamining medical expert. Tr. 53, 55. In a written decision issued July 23, 2016, ALJ Grace found Plaintiff disabled beginning April 1, 2014. Tr. 20–46. ALJ Grace, however, found Plaintiff was not disabled before April 1, 2014. On August 22, 2017, the Appeals Council denied review, rendering ALJ Grace's decision final. Tr. 1–5.

---

[2] "Tr." refers to the administrative record transcript, filed here as ECF 10 and 11.

SEQUENTIAL DISABILITY ANALYSIS

A claimant is disabled if she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability claims are evaluated according to a five-step procedure. *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009). The claimant bears the ultimate burden of proving disability. *Id.*

At the first step, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520(b), 416.920(b). At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140–41; 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled.

At step three, the Commissioner determines whether claimant's impairments, singly or in combination, meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

At step four, the Commissioner determines whether the claimant, despite any impairment(s), has the RFC to perform "past relevant work." 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can, the claimant is not disabled. If the claimant cannot perform past relevant work, the burden shifts to the Commissioner. At step five, the Commissioner must establish that the claimant can perform other work. *Yuckert*, 482 U.S. at 141–42; 20 C.F.R. §§

404.1520(e) & (f), 416.920(e) & (f). If the Commissioner meets its burden and proves that the claimant is able to perform other work which exists in the national economy, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

THE ALJ'S DECISION

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since January 6, 2011, the amended alleged onset date. Tr. 22.

At step two, the ALJ determined Plaintiff had the following severe impairments before April 1, 2014: obesity, sleep apnea, degenerative disc disease of the lumbar spine "status-post [two] back surgeries," migraine headaches, post-traumatic stress disorder ("PTSD"), anxiety disorder, adjustment disorder, and a "history of personality disorder." Tr. 22. The ALJ also found Plaintiff had the following additional severe impairments as of April 1, 2014: left knee meniscus tear and chondromalacia patella, bilateral lower extremity edema, and asthma. Tr. 22–24.

At step three, the ALJ found Plaintiff's impairments or combination of impairments did not meet or equal the severity of one of the listed impairments. Tr. 24–28.

Before step four, the ALJ determined Plaintiff had the RFC prior to April 1, 2014, to perform work consistent with the following limitations:

> [T]he claimant had the residual functional capacity to perform light work, which is defined in 20 CFR 404.1567(b) and 416.967(b). The claimant required permission to change position from sitting to standing or standing to sitting approximately every 30 minutes at the work station, thereby resulting in no loss of productivity other than the very brief time required to accomplish the position change. She was not able to climb ladders, ropes, or scaffolds or to crawl. She was able occasionally to climb ramps and stairs and occasionally to balance, stoop, kneel, and crouch. The claimant had to avoid concentrated exposure to vibrations and hazards. She was able to perform simple, routine, repetitive tasks consistent with unskilled work in jobs that required no more than occasional, superficial contact with the public and co-workers.

Tr. 28–39. The ALJ also determined, however, that as of April 1, 2014, Plaintiff "had the residual functional capacity to perform light work" as she did before April 1, 2014, but that "she

4 – OPINION & ORDER

further must be permitted to take 3 extra breaks per day, for 15 minutes each, in addition to standard breaks." Tr. 39–41.

At step four, the ALJ determined Plaintiff was unable to perform her past relevant work as a telemarketer, office helper, general production worker, customer-service representative, or child monitor. Tr. 41–43.

At step five, the ALJ concluded other jobs existed in the national economy that Plaintiff could perform before April 1, 2014, including work as a mail clerk, a merchandise marker, and a hand packager. Tr. 44. The ALJ also found that as of April 1, 2014, there were not any jobs that existed in significant numbers in the national economy that Plaintiff could perform. Tr. 45. Accordingly, the ALJ concluded Plaintiff became disabled on April 1, 2014, but was not disabled before that date. Tr. 45–46.

STANDARD OF REVIEW

A court may set aside the Commissioner's denial of benefits only when the Commissioner's findings are based on legal error or are not supported by substantial evidence in the record as a whole. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted). Courts consider the record as a whole, including both the evidence that supports and detracts from the Commissioner's decision. *Id.*; *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). "Where the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be affirmed." *Vasquez*, 572 F.3d at 591 (internal quotation marks omitted); *see also Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007)

("Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's.") (internal quotation marks omitted).

DISCUSSION

Plaintiff contends the ALJ's decision was not supported by substantial evidence and contains legal errors. In particular, Plaintiff argues the ALJ made the following three errors. First, the ALJ improperly discredited Plaintiff's testimony. Second, the ALJ improperly discredited the opinion of FNP Foy, Plaintiff's primary-care provider. Third, the ALJ improperly discredited the testimony of Dr. Harter,[3] the non-examining medical expert.

## I. Plaintiff's Testimony

Plaintiff contends the ALJ improperly rejected her testimony regarding the severity and extent of her limitations. The ALJ is responsible for determining credibility. *Vasquez*, 572 F.3d at 591. Once a claimant shows an underlying impairment and a causal relationship between the impairment and some level of symptoms, clear and convincing reasons are needed to reject a claimant's testimony if there is no evidence of malingering. *Carmickle v. Comm. Soc. Sec. Admin.*, 533 F.3d 1155, 1160 (9th Cir. 2008) (absent affirmative evidence that the plaintiff is malingering, "where the record includes objective medical evidence establishing that the claimant suffers from an impairment that could reasonably produce the symptoms of which he complains, an adverse credibility finding must be based on 'clear and convincing reasons'"); *see also Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (holding that if the claimant has presented such evidence, and there is no evidence of malingering, then the ALJ must give

---

[3] Based on a misspelling of Dr. Harter's name in the transcript of the May 5, 2016, hearing, Plaintiff contends the ALJ incorrectly spelled Dr. Harter's name in his written decision. Plaintiff is incorrect. Dr. Harter's curriculum vitae confirms the ALJ correctly spelled Dr. Harter's name. Tr. 1511–12.

"specific, clear and convincing reasons in order to reject the claimant's testimony about the severity of the symptoms") (internal quotation marks omitted).

When determining the credibility of a plaintiff's complaints of pain or other limitations, the ALJ may properly consider several factors, including the plaintiff's daily activities, inconsistencies in testimony, effectiveness or adverse side effects of any pain medication, and relevant character evidence. *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995). The ALJ may also consider the ability to perform household chores, the lack of any side effects from prescribed medications, and the unexplained absence of treatment for excessive pain. *Id.*

> The ALJ may consider many factors in weighing a claimant's credibility, including (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities.

*Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (internal quotation marks omitted).

As the Ninth Circuit further explained in *Molina*;

> While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting[.] Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment.

674 F.3d at 1112–13 (internal citations and quotation marks omitted).

At the December 1, 2015, hearing, Plaintiff testified her physical limitations were the primary cause of her alleged inability to work at that time. Tr. 77. Plaintiff told ALJ Grace that her migraine headaches were "debilitating for one to two days at a time," she had to elevate her feet because of swelling, and she could only sit for approximately 30 minutes before she had to stand up and stretch because of her back pain. Tr. 77, 89. Plaintiff testified that her migraines

began approximately 18 months before the hearing, and that with the help of preventative medication she suffers headaches four or five times per month. Tr. 83–84. With respect to her back pain, Plaintiff indicated her medication controlled her pain on some days, but not on others, and that on days in which her pain was more severe she must stay in bed. Tr. 78–79. Plaintiff indicated a left-knee injury causes her difficulty with stairs, and that standing still or walking for more than 20 minutes exacerbates her knee pain. Tr. 79. Plaintiff reported the swelling in her legs had been a problem for "a couple years" before the hearing. Tr. 79–80. In addition, Plaintiff reported she had difficulties breathing that resulted in sleep apnea and required her to use an inhaler. Tr. 82–83. Plaintiff testified her social anxiety and PTSD make it "hard to even want to step out of the door" at times, and "prevents [her] from wanting to be around people some days." Tr. 81.

Because of her limitations, Plaintiff testified she sometimes needs help from family and friends to care for her son because she "can't physically do it." Tr. 85–86. Plaintiff also indicated her son and mother have to help with shopping and daily chores because she can only perform household activities in "15 minute spurts." Tr. 86, 92.

Plaintiff submitted an Adult Function Report dated November 20, 2013. Tr. 329–36. In that Function Report, Plaintiff indicated she "continue[s] to struggle with daily living and activities," and explained that "[i]f [she is] not in physical pain, [her] depression and anxiety keep [her] from doing the regular things [she] need[s] to do; *i.e.*, housework, personal care, and socializing outside of [her] house." Tr. 329. Plaintiff indicated her mother helped with household chores, and that Plaintiff was not able to stand for long periods to cook. Tr. 330–31. Plaintiff reported she was "working on [her] anxiety to help [her] feel better about going out alone," and that it was "hard to be in social settings." Tr. 332–33. Plaintiff reported she had only "family and

2 close friend[s] that [she] feel[s] safe being around." Tr. 333. Plaintiff indicated her conditions affected her abilities to lift, squat, bend, stand, reach, walk, sit, kneel, climb stairs, complete tasks, and concentrate. Tr. 334. In addition, Plaintiff indicated she can only walk for "10–15 min[utes] max," and that afterward she needs 10–30 minutes of rest before she can continue. Tr. 334.

The ALJ discredited Plaintiff's testimony because the medical record reflected milder symptoms than Plaintiff alleged during the period before April 2014, many of Plaintiff's symptoms were effectively managed by medication and treatment before April 2014, and Plaintiff's activities of daily living – particularly as they related to social functioning – were inconsistent with Plaintiff's allegations. The Court concludes the ALJ provided legally sufficient reasons for discrediting Plaintiff's testimony concerning the extent of her limitations before April 2014.

The ALJ reasonably concluded the medical record reflected milder symptoms than Plaintiff alleged between the January 6, 2011, alleged onset date and April 1, 2014. During that time, although Plaintiff's treatment providers frequently noted maintenance of chronic back pain, the record reflects it was largely controlled by medication. *See, e.g.*, Tr. 1225, 1299, 1301, 1308. Moreover, as the ALJ noted, Plaintiff's treatment providers frequently observed Plaintiff's gait and range of motion to be normal. *See, e.g.*, 1226, 1227, 1228, 1232, 1299, 1303, 1344. Viewed as a whole, the medical record does not support Plaintiff's allegations of significant limitations on the basis of uncontrolled back pain before April 1, 2014.

The ALJ also reasonably observed the record does not support Plaintiff's allegations of social limitations. In particular, in the November 20, 2013, Adult Function Report, Plaintiff indicated she suffered from significant social limitations as a result of her mental-health

conditions, including that Plaintiff was unable to go out alone, only felt comfortable around a small group of friends and family, and that Plaintiff had difficulty being in social settings. *See* Tr. 332–34. During this same period, however, Plaintiff reported to her therapist that she attended and hosted multiple parties, frequently went out both alone and with friends, and maintained multiple romantic relationships. *See, e.g.*, Tr. 1162, 1184, 1186, 1187, 1190, 1197, 1199, 1336. The ALJ reasonably found the substantial social activities that Plaintiff reported to her therapist were inconsistent with her allegations of very significant social limitations. This is a compelling reason to discredit Plaintiff's testimony as to her mental-health limitations and, more broadly, constitutes a valid basis to reach an adverse finding as to the credibility of Plaintiff's testimony as a whole.

On this record, therefore, the Court finds the ALJ did not err when he discredited Plaintiff's testimony because he provided legally sufficient reasons for doing so.

## II. FNP Foy's Opinion

Plaintiff next contends the ALJ improperly discredited the opinion of Maria Foy, a family nurse practitioner who was Plaintiff's primary-care provider.

Medical sources are divided into two categories: "acceptable" and "not acceptable." 20 C.F.R. § 416.902. Acceptable medical sources include licensed physicians and psychologists. 20 C.F.R. § 416.902. Medical sources classified as "not acceptable" or "other sources" include, but are not limited to, nurse practitioners, therapists, LCSWs, and chiropractors. SSR 06–03p, at *2. Under Ninth Circuit law, evidence from "other sources" is considered under the same standard as that used to evaluate lay-witness testimony, meaning the ALJ may reject it for reasons germane to the witness. *Molina*, 674 F.3d at 1111 (because a physician's assistant was not an acceptable medical source, the ALJ could discount physician's assistant's opinion for germane reasons).

Because FNP Foy is a family nurse practitioner the ALJ was required to provide germane reasons to discredit her testimony.

FNP Foy signed a letter dated December 6, 2015, that was drafted by Plaintiff's counsel in which Foy endorsed the following summary of a conversation between she and Plaintiff's counsel:

> You have treated [Plaintiff] since January of 2011 for back pain, asthma, and recurring upper respiratory infections. She began to be treated for migraine headaches in about December 2013 and for edema of the ankles in May of 2014. However, the complicating factor in her medical conditions is her obesity, which exacerbates her back pain, complicates her asthma, causes her to be fatigued upon any significant activity, and leaves her much more susceptible to upper respiratory infections.
>
> In response to my questions you provided the following restrictions:
>
> Since you first treated her in January 2011 it would be reasonable to limit her to work or work-like activities which do not require standing or walking more than 10-15 minutes at a time, or more than two hours in an eight hour period. Furthermore, she should be allowed to stand and move about for about 10 minutes every hour because of back pain. Because of her obesity she should be supplied with a chair manufactured to support her, and should have enough space around her so that she move [*sic*] freely when changing positions.
>
> Because of pain and fatigue you do not think she could work for a full hour [*sic*] day with usual and customary breaks, and would limit her to no more than six hours per day and then only if she could take breaks and lie down as necessary. It would be your opinion that because of pain and fatigue she would probably miss more than two days per month of work.

Tr. 1498.

The ALJ discredited FNP Foy's opinion on the basis that the medical record does not support Foy's opinion regarding Plaintiff's onset date in January 2011; Plaintiff's standing, walking, and sitting limitations; and Plaintiff's need for a specially-manufactured chair. The Court concludes these reasons amount to germane reasons to discredit FNP Foy's opinion.

As noted, the ALJ reasonably found the medical evidence before April 2014 did not indicate that Plaintiff's back pain was sufficiently severe to support such substantial standing,

walking, and sitting limitations. The ALJ found that Plaintiff rarely complained of significant, uncontrolled back pain even though she was seeing FNP Foy regarding her pain medication. Moreover, viewing the record as a whole, the ALJ reasonably concluded Plaintiff's conditions did not become disabling until her condition worsened around April 2014, and, therefore, the ALJ also reasonably found FNP Foy's opinion regarding a January 2011 onset of disability was not supported by the record.

Accordingly, on this record the Court concludes the ALJ did not err when he discredited FNP Foy's opinion because he provided legally sufficient reasons for doing so.

### III. Dr. Harter's Opinion

Plaintiff next contends the ALJ erred when he discredited the opinion of testifying medical expert, Melvin M. Harter, M.D.

Social security law recognizes three types of physicians: (1) treating; (2) examining; and (3) nonexamining. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). Generally, more weight is given to the opinion of a treating physician than to the opinion of those who do not actually treat the claimant. *Id.*; 20 C.F.R. §§ 404.1527(c)(1)–(2), 416.927(c)(1)–(2). Moreover, more weight is given to an examining physician than to a nonexamining physician. *Garrison*, 759 F.3d at 1012.

Dr. Harter was a nonexamining physician. "The Commissioner may reject the opinion of a non-examining physician by reference to specific evidence in the medical record." *Sousa v. Callahan*, 143 F.3d 1240, 1244 (9th Cir. 1998); s*ee also Patricia T. v. Comm'r Soc. Sec.*, No. 1:17-cv-00912-MC, 2018 WL 4610053, at *3 (D. Or. Sept. 25, 2018).

Dr. Harter testified at the May 5, 2016, hearing that Plaintiff has back pain and degenerative knee disease that have been brought on by Plaintiff's obesity. Tr. 58–59. Dr. Harter

stated Plaintiff has "ultra-severe sleep apnea," and indicated Plaintiff has never had a "good night's sleep." Tr. 60. Dr. Harter opined, however, that Plaintiff's biggest problem was bilateral brawny edema that was a consequence of venous insufficiency. Tr. 60. Because of that edema, Dr. Harter indicated Plaintiff should elevate her legs "whenever she's sitting for more than a few minutes," and "ought to stand up and sit down frequently." Tr. 63. As a result of her conditions, Dr. Harter opined Plaintiff equaled Listing 1.02(a), and appeared to indicate Plaintiff's limitations go back to 2008. Tr. 62–64.

The ALJ discredited Dr. Harter's opinion on the basis that it was inconsistent with the medical evidence that indicated Plaintiff's physical symptoms, including back pain and edema, were not as significant as Dr. Harter suggested before April 2014. The Court finds the ALJ reasonably discredited Dr. Harter's opinion on this basis.

Edema was not a prominent part of the medical record until 2014. Even in April 2014, FNP Foy noted Plaintiff had "[n]o swelling of the lower leg today." Tr. 1351. On June 30, 2014, Plaintiff's physical therapist "[n]oted edema and increased swelling in [left] knee and lower leg," but Plaintiff did not address her edema as an acute problem until September 8, 2014, when she reported she was "having some edema" and that her medication was not helping. Tr. 1436, 1472. Similarly, although Dr. Harter correctly noted Plaintiff was observed to have "extremely severe sleep apnea" on February 17, 2016, Dr. Harter did not acknowledge that Plaintiff responded "dramatically" to the use of a CPAP in that study, or that an earlier November 2009 study found only "moderate" sleep apnea. Tr. 932, 1525. Although there were some references to sleep apnea throughout the record, the record as a whole reflects it did not become acute until after April 2014. Finally, as noted, the ALJ reasonably found Plaintiff's pre-April 2014 back pain was

sufficiently controlled with treatment that it did not result in limitations as significant as those outlined by Dr. Harter.

Accordingly, on this record the Court concludes the ALJ did not err when he discredited Dr. Harter's testimony because he provided legally sufficient reasons for doing so.

CONCLUSION

For these reasons, the Commissioner's decision is affirmed.

IT IS SO ORDERED.

DATED this 29 day of October, 2018.

*signature*

MARCO A. HERNÁNDEZ
United States District Judge